---

**SO ORDERED,**



Judge Selene D. Maddox

United States Bankruptcy Judge

**The Order of the Court is set forth below. The case docket reflects the date entered.**

---

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE: JOHN COLEMAN** | **CASE NO.: 21-11833-SDM** |
| **DEBTOR** | **CHAPTER 7** |

## MEMORANDUM OPINION AND ORDER DISAPPROVING APPLICATIONS TO EMPLOY AND FOR COMPENSATION

Before the Court are two Applications filed by Charles J. Swayze, III[1] ("Swayze") and the law firm of Whittington, Brock & Swayze, P.A. ("WBS") on behalf of the Debtor, John Coleman: (1) the *Application to Employ Attorneys* (the "Employment Application") (Dkt. #291) and (2) the *First Application for Allowance of Compensation and Reimbursement of Necessary Expenses for the Law Offices of Whittington, Brock & Swayze, P.A.* (the "Fee Application") (Dkt. #292).[2] The United States Trustee (the "UST") filed *Objections* to both Applications. (Dkt. #s 302, 303). WBS then filed a *Response* (Dkt. #304) to the UST's Objection to the Employment Application and a *Response and Motion to Strike* (Dkt. #305) to the UST's Objection to the Fee Application. The

---

[1] In addition to Charles J. Swayze, III, Charles J. Swayze, Jr. ("Swayze Jr.") also signed the Employment Application and the Fee Application. As indicated in the Applications, both attorneys represented the Debtor during the pendency of this bankruptcy case.

[2] For ease of reference, the Court may refer to both the Employment and Fee Applications simply as the "Applications".

Court conducted a hearing, and at the conclusion of the hearing, took the legal issues raised by the parties under advisement.[3] The Court is now prepared to rule. Based on the below, the Court finds that both Applications should be disapproved.

## I. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a). This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

## II. BACKGROUND

The Debtor filed his Voluntary Chapter 11 Petition (the "Petition") on September 29, 2021. (Dkt. #1). Craig Geno ("Geno") filed the Petition on the Debtor's behalf. Prior to filing the Petition, and in addition to Geno's representation of the Debtor, the Debtor engaged the services of WBS and its attorneys, Swayze and Swayze Jr. In fact, on the same day the Petition was filed, the Debtor paid a $25,000.00 retainer to WBS, which was later disclosed to the Court in WBS's *Disclosure of Compensation* filed on January 14, 2022. Dkt. #95.[4]

In addition to the disclosure filed above, other documents filed with the Court indicated that Swayze and Swayze Jr. were serving as co-counsel with Geno. In Geno's *Application to Employ Attorneys and Disclosure of Compensation*, Geno referenced the $25,000.00 retainer paid by the Debtor to WBS stating, in similar terms to WBS's Employment Application, that the retainer would be used to reduce the amount of future compensation due to either Geno or WBS. (Dkt.

---

[3] At the hearing, the Court denied WBS's requested relief to strike the UST's Objection (Dkt. #303) as untimely.

[4] According to the Employment Application, the $25,000.00 retainer was intended to reduce the amount of compensation in any future compensation applications filed by either Geno or WBS. Based on the pleadings and information received by the Court at the hearing on June 21, 2023, none of the $25,000.00 retainer has been used to compensate any professional.

#163). But the Court's *Order Authorizing Debtor to Employ Attorneys* did not include any mention of WBS or its attorneys representing the Debtor. (Dkt. #192).[5] In any event, during the pendency of this bankruptcy case, WBS filed a *Motion to Approve Contract for the Sale of Real Estate* where it was evident that WBS and its attorneys were representing the Debtor and his spouse in the sale of real estate where an offer for sale had been negotiated prior to the Petition date. (Dkt. #49). The Court granted WBS's sale motion on December 15, 2021. (Dkt. #75).[6]

After an attempted voluntary dismissal of the Chapter 11 case, the Court found that it would be in the best interests of Creditors and the bankruptcy estate—in large part due to the Debtor's bad faith conduct—to appoint an examiner. See *Order Denying the Debtor's Motion to Dismiss and Ordering the Appointment of an Examiner under 11 U.S.C. § 1104(c)*, Dkt. #94.[7] Later, Geno filed two Motions to Sell: (1) *Motion for Authority to Sell Real Property Outside the Ordinary Course of Business Free and Clear of Liens, Claims and Interests* and (2) *Motion for Authority to Sell Real Property Outside the Ordinary Course of Business Free and Clear of Liens, Claims and Interests* (Dkt. #s 181, 214) (collectively, the "Motions to Sell"). The Court subsequently granted the Motions to Sell on June 30, 2022, and August 30, 2022, respectively. (Dkt. #s 205, 219).[8]

---

[5] The Court approved Geno's application to employ on June 2, 2022. *Order Authorizing Debtor to Employ Attorneys*, Dkt. #192.

[6] WBS filed its *Report of Sale* (Dkt. #126) on March 1, 2022, indicating that the sale was complete and the net proceeds from the sale would be deposited into the Debtor-in-possession's bank account with Regions Bank.

[7] The United States Trustee (the "UST") filed its *Application for Approval of Chapter 11 Examiner* (Dkt. #101), which sought Court approval to appoint Albert Altro ("Altro" or the "Examiner"). The Court ultimately approved that application. (Dkt. #106). The Examiner then sought the employment of Phelps Dunbar, LLP ("Phelps") and its attorneys as his general counsel, and the Court approved that application as well. (Dkt. #116).

[8] While Geno filed the Motions to Sell, the Fee Application and Fee Itemization attached as Exhibit A (the "Itemization") make clear that WBS and its attorneys performed work related to the sale of those real properties.

On July 13, 2022, Geno filed his *First Application for Allowance of Compensation and Reimbursement of Necessary Expenses for the Law Offices of Craig M. Geno, PLLC* (Dkt. #209), which the Court approved on August 9, 2022. (Dkt. #218). Later, the Examiner and Phelps sought approval of fee applications, and the Court approved those fee applications on December 15, 2022. (Dkt. #s 237, 238). On January 10, 2023, the UST filed a *Motion to Convert to Chapter 7*. (Dkt. #241). Prior to the conversion of the bankruptcy case to a case under Chapter 7, the Examiner, Phelps, and Geno all filed fee applications, which the Court approved.[9] (Dkt. #s 247, 248, and 266). The Court then converted the bankruptcy case to a case under Chapter 7 on March 2, 2023.[10] (Dkt. #272).

Over two months later, on May 8, 2023, WBS filed the Applications at issue in this Opinion and Order. The Employment Application states that WBS and its attorneys have represented the Debtor in prior years and are currently serving as co-counsel with Geno in this bankruptcy case. Further, while the Employment Application acknowledges that this bankruptcy case was converted to a case under Chapter 7, it contains language that the Debtor-in-possession (not the Chapter 7 Trustee) is requesting the employment of WBS. Further, the Employment Application states that WBS's employment is necessary to facilitate a successful reorganization. Finally, the Employment Application contains the standard disinterestedness language, admitting that WBS has no conflicts of interests, but its attorneys previously represented the Debtor, Express Grain Terminals, LLC,

---

[9] The Examiner filed a *Final Application for Compensation* (Dkt. #247) on January 17, 2023. Phelps filed its *Final Application for Compensation* (Dkt. #248) on the same date. The Court approved those fee applications on February 13, 2023. (Dkt. #s 264, 265). Finally, Geno filed his *Second Application for Compensation* (Dkt. #266) on February 15, 2023, and the Court approved that fee application on March 2, 2023. (Dkt. #271).

[10] William Fava was appointed as the Chapter 7 Trustee.

("Express Grain"), Express Biodiesel, LLC ("Express Biodiesel"), and Express Processing, LLC ("Express Processing").[11]

Regarding the Fee Application, WBS contends that it rendered substantial, reasonable, and necessary services to Debtor which benefited the bankruptcy estate. Based on the Itemization and description of the work performed, WBS: (1) participated in multiple telephonic conferences and meetings with attorneys, creditors, realtors, and the Debtor; (2) performed legal research relating to the intersection of a state court chancery receivership and bankruptcy law; (3) drafted pleadings and other legal documents filed in this Court; (4) reviewed various forms of correspondence; and (5) performed contractual and other work to facilitate the sale of and closing on parcels of real property.[12] For those services, WBS is seeking a total of $14,881.28 in attorneys' fees and costs for the time period between September 27, 2021 to May 2, 2023.[13] Some of the work performed occurred prior to the Petition date and, of course, all the services rendered by WBS and its attorneys occurred prior to this Court's approval of any employment.

The UST's Objections to the Applications are straightforward. To begin, the UST asserts that WBS and its attorneys fail to provide any justification for why they are seeking employment

---

[11] Express Grain, the limited liability company for which the Debtor was Chief Executive Officer and a Member, filed its Chapter 11 Voluntary Petition on September 29, 2021. *In re Express Grain Terminals, LLC*, Case No. 21-11832-SDM, Dkt. #1. Express Biodiesel and Express Processing are separate limited liability companies of which the Debtor is also of Member. Those entities also filed for bankruptcy relief and the bankruptcy cases are being jointly administered with Express Grain. See *In re Express Biodiesel*, *LLC*, Case No. 21-11834-SDM; *In re Express Processing, LLC*, Case No. 21-11835-SDM.

[12] Apparent from the Itemization, WBS performed work related to the sale of parcels of real property located in Leflore and Carroll Counties.

[13] WBS's attorneys billed at an hourly rate of $350.00. According to the Itemization, WBS billed $6,650.00 for services performed prepetition and $7,980.00 for postpetition services. Only one of WBS's time entries is for work performed post-conversion: a telephone call with Geno on May 1, 2023 for .3 hours for a total of $105.00. WBS is only requesting $251.28 in expense reimbursement.

18 months postpetition and almost a year after Geno filed his application for employment. Based on the lack of justification for the tardy filing, the UST claims that WBS's Employment Application violates Uniform Local Rules for the Northern and Southern District of Mississippi (the "Local Rules"). Further, the UST points out that while WBS and its attorneys are seeking employment nunc pro tunc[14], the Employment Application fails to specifically plead this relief. As to the Fee Application, the UST asserts that some of the time entries relating to telephonic conferences with Geno appear to be duplicative, and generally, the UST is unsure of how much of WBS's services related to the bankruptcy case outside of the context of the sale of real property. The UST also questioned the time entries for September 28, 2021 and the 15 total hours billed on that day relating to the bankruptcy and the receivership complaint filed by UMB Bank in state court.

  WBS's Responses to the UST's arguments above suggests its attorneys delayed filing the Applications because the Debtor, who was arguably engaging in activity determinantal to his own interests, sought to dismiss his own bankruptcy case. WBS argues that if the Court would have dismissed the bankruptcy case, no filings would have been necessary. WBS also states that its attorneys were still working up until the filing of the Applications, so filing the Applications prior to completion of the work would have been premature. WBS claims that no party would be prejudiced if the Court approved the Applications at this juncture because it fully disclosed its representation and the $25,000.00 retainer currently on deposit in its trust account.

---

[14] "Black's law dictionary explains [nunc pro tunc] as '[a] phrase applied to acts allowed to be done after the time when they should be done, with a retroactive effect, i.e., with the same effect as if regularly done.' It 'signifies now for then, or in other words, a thing is done now, which shall have the same legal force and effect as if done at the time when it ought to have been done.' *In re Hunanyan*, 631 B.R. 904, 912 n.2 (Bankr. C.D. Cal. 2021) (internal citations omitted)

As to the September 28, 2021 time entry questioned by the UST, WBS states that its work

on that day was "substantial and consequential". Specifically, WBS pled the following:

> On said date, UMB Bank, N.A. ("UMB") filed a Verified Complaint of Receiver, Temporary Restraining Order, Breach of Contract, Breach of Guarantee and Other Relief and Request for Expedited Hearing against Express Grain, [the] Debtor and various other defendants in the Chancery Court of Leflore County, Mississippi. The Complaint was 29 pages plus 26 exhibits. The Law Firm reviewed the Complaint and met with UMB and its counsel. The Law Firm also consulted with Geno and [the] Debtor. At the conclusion it was determined that the best course of action was bankruptcy protection for the Debtor. The activities of September 28, 2021 were necessary and for the benefit of [the] Debtor's estate.

*Response to United States Trustee's Objection to First Application for Allowance of Compensation and Reimbursement of Necessary Expenses for the Law Offices of Whittington, Brock & Swayze, P.A. and Motion to Strike Objection*, Dkt. #305.

The Court conducted a hearing on June 21, 2023 at which Swayze, the UST, and the

Chapter 7 Trustee all participated.[15] At the hearing, Swayze outlined the scope of WBS's

representation of the Debtor both before and after the Debtor filed his Petition. The UST reiterated

its objections and argued that WBS still had not adequately explained the delay in filing the

Employment Application because Geno filed his application in April of 2022 while the case was

still under Chapter 11. The UST also argued that employment of professionals in a Chapter 7

bankruptcy case is a duty left solely to a Chapter 7 trustee, and any employment of WBS at this

juncture (i.e., post-conversion) would not benefit the bankruptcy estate. According to the UST,

conversion has a substantial effect on the employment and fee process. Even more, the UST argued

that if the Court were to approve attorneys' fees and costs to WBS, unsecured creditors would be

prejudiced by receiving less in distributions from the bankruptcy estate. Finally, the UST requested

alternative relief: if the Court approves the Applications, the Court should disallow some fees due

---

[15] While the UST filed its Objections, the Chapter 7 Trustee did not file any responsive pleading. The Court did allow, however, the Chapter 7 Trustee to present arguments at the hearing.

to duplication of services between Geno and Swayze, including a three-hour hearing in the Express

Grain bankruptcy case on September 6, 2021, and two telephone calls between Geno and Swayze

on April 18, 2022 and May 11, 2022.

The Chapter 7 Trustee agreed with the UST and argued that there is no legal basis for the

Court to employ WBS or approve WBS's attorneys' fees post-conversion. The Chapter 7 Trustee

also asserted that the $25,000.00 retainer is property of the Debtor's bankruptcy estate (paid by

the Debtor, individually, from his Regions bank account), which is why he requested WBS

turnover those funds prior to the filing of the Applications. The Chapter 7 Trustee argued that

WBS should only be entitled to an unsecured claim to be paid the same as all other unsecured

creditors.

### III. DISCUSSION

The issue facing this Court is whether the Court can approve WBS's employment, making

it retroactive[16] to the date WBS began working for the Debtor. In deciding this issue, the Court must

simultaneously address WBS's request for compensation and expense reimbursement. The Court is

aware of the split in authority regarding courts' ability to provide retroactive relief after the United

States Supreme Court's decision in *Archdiocese of San Juan v. Acevedo Feliciano*[17], and the issue

of professional employment and compensation in a converted bankruptcy case adds an additional

layer of complexity. No party presented much legal authority, and as such, the Court will fill in the

gaps.

---

[16] Black's Law Dictionary defines retroactive as "looking back; contemplating what is past." *Retroactive*, BLACK'S LAW DICTIONARY (11th ed. 2019). As explained more below, the Court believes the terms "retroactive" or "post facto" more aptly describes the type of relief WBS seeks in its Employment Application.

[17] *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 589 U.S. ----, 140 S. Ct. 696 (2020). The Court will discuss *Acevedo* and other courts which have addressed its impact on nunc pro tunc employment orders more below.

## A. Retention and Compensation Generally

11 U.S.C §§ 327 through 331[18] govern employment of professionals and payment of legal fees for services provided as counsel for a trustee or debtor-in-possession. Relevant to the issue before this Court, § 327 authorizes retention of attorneys to "represent or assist the trustee in carrying out the trustee's duties . . . ." 11 U.S.C. § 327(a). In addition, Federal Rules of Bankruptcy Procedure, Rule 2014, provides that an order approving the employment of attorneys under § 327 shall be made only on application of the *trustee*.[19] Fed. R. Bank. P. 2014(a) (emphasis added).[20] The purpose of § 327 is to provide notice to all creditors and other interested parties that the trustee, or debtor-in-possession, is hiring a professional and proposing to pay the professional from estate funds. *In re McKenzie*, 449 B.R. 306, 318 (Bankr. E.D. Tenn. 2011). Section 327 allows courts to perform a "screening process, verify the necessity of employment, ensure the neutrality of the person employed, and control and limit estate expenses, thereby promoting efficient administration of the bankruptcy estate." *Id.* (internal citation omitted).

Section 330 addresses compensation for professionals previously employed under § 327, including attorneys. Specifically, § 330 provides criteria governing compensation, allowing the court to award reasonable compensation and expenses incurred for necessary services provided by a professional. 11 U.S.C. § 330(a). Section 330 also outlines other factors for accessing the reasonableness of compensation like the rates charged, what is customary, the time spent on

---

[18] Unless noted otherwise, all statutory references will be to Title 11 of the United States Code.

[19] In Chapter 11 bankruptcy cases, debtors-in-possession have most of the powers and duties of trustees. 11 U.S.C. § 1107(a). But in Chapter 7 bankruptcy cases, the trustee, not the debtor, assumes responsibility for investigating the debtor's financial affairs, collecting property of the estate, and examining the proofs of claim, among other duties. See 11 U.S.C. § 704.

[20] Neither § 327 nor Bankruptcy Rule 2014(a) impose a deadline for filing the employment application.

services, among others. 11 U.S.C. § 330(a)(3). Like § 327, § 330 contains no filing deadline, but fee approval is contemplated to occur "significantly after employment was approved, and usually when all or most of the work has been completed" so that its value to the bankruptcy estate can be evaluated. *In re Hunanyan*, 631 B.R. 904, 909 (Bankr. C.D. Cal. 2021).

**B. *Acevedo*: Nunc Pro Tunc Orders**

As mentioned above, since the Supreme Court's decision in *Acevedo*, some bankruptcy courts have questioned the appropriateness of issuing orders nunc pro tunc, including professional retention orders. The Court readily admits that many professional employment applications (at least in consumer bankruptcy cases for special counsel) still seek employment nunc pro tunc. Therefore, this Court, like others before it, must directly address this issue to provide clarity for professionals seeking employment and compensation under the Bankruptcy Code and Rules.

In *Acevedo*, the defendant removed the case from a Puerto Rico state court to the federal district court. *Acevedo*, 140 S. Ct. at 699-700 (2020). Postremoval, i.e., while the federal court still had jurisdiction over the case, the Puerto Rico court entered several payment and seizure orders against the defendant. *Id.* Five months later, the federal court remanded the case to the Puerto Rico court. *Id.* The federal court's remand order was entered nunc pro tunc, which made the remand effective several days prior to the entry of the Puerto Rico court's initial payment and seizure order. *Id.* The Supreme Court held the payment and seizure orders were void because the Puerto Rico court lacked jurisdiction while the case was pending in federal court. *Id.* at 700. In addition, the federal court could not make its remand order effective at the time in which the Puerto Rico court did not have jurisdiction. *Id.* The Supreme Court explained that while federal courts may issue nunc pro tunc orders (or "now and then" orders) to "reflect the reality of what has already occurred," nunc pro tunc orders presuppose that a court has issued a ruling that was not entered

only because of a court's "inadvertence". *Id.* at 700-01. According to the Supreme Court, nunc pro

tunc orders are not an "Orwellian vehicle for revisionist history—creating facts that never occurred

in fact." *Id.*

## C. Retroactive Relief Post-*Acevedo*

Because other courts have addressed the authority of bankruptcy courts to enter orders

providing relief retroactively since *Acevedo*, this Court need not start from scratch.[21] Following

*Acevedo*, courts have refrained from issuing nunc pro tunc orders when such relief would distort

the factual record, including overcome untimely filings, or remedy a jurisdictional deficiency[22].

For instance, in *In re Nilhan Dev., LLC*, 620 B.R. 385 (Bankr. N.D. Ga. 2020), the court found

that *Acevedo* effectively prohibited the grant of nunc pro tunc authorization for a loan transaction

falling outside the ordinary course of business, which did not align with the provisions of § 364.

*Nilhan*, 620 B.R. at 406. Moreover, in the case of *In re Parker*, the court determined that *Acevedo*

precludes the issuance of a nunc pro tunc order for the reinstatement of the automatic stay because

the court was not previously petitioned to do so. *In re Parker*, 624 B.R. 222, 236 (Bankr. W.D. Pa.

2021).

In *In re Zvoch*, 618 B.R. 734 (Bankr. W.D. Pa. 2020), the court highlighted that *Acevedo*

prohibits the granting of a nunc pro tunc order when the need for such an order arises from the

debtor's failure to seek preapproval for a car financing agreement, rather than any inadvertence on

the part of the court. *Zvoch*, 618 B.R. at 741. As to the timeliness of pleadings, in *McNeill v.*

---

[21] The Court appreciates the work of the Hon. Jerry C. Oldshue, Jr., United States Bankruptcy Judge for the Southern District of Alabama, for some of the information used in this Opinion and Order regarding the development of the body of case law post-*Acevedo*.

[22] See *In re Telles*, 2020 WL 2121254 (Bankr. E.D.N.Y. Apr. 30, 2020), where the court held that nunc pro tunc relief from the automatic stay could not be granted to cure a jurisdictional defect in a state court action involving bankruptcy estate property.

*Hinson,* 2020 WL 8617627 (W.D.N.C. Dec. 8, 2020), the court elucidated that *Acevedo* serves as a bar to courts issuing nunc pro tunc orders to retroactively declare a pleading as timely filed when it, in fact, was not timely, as such an action would amount to an alteration of the factual record. *McNeill,* 2020 WL 8617627 at *1.

The courts above, however, did not address the impact of *Acevedo* in the professional employment and compensation context. Regarding retention and employment applications, most courts have held that retroactively employing a professional to a date before the employment order's entry is prohibited. Those courts maintained, however, that compensation for services provided before the entry of an employment order could still be awarded. For example, in *In re Miller,* 2020 WL 8617627 (Bankr. E.D. Cal. 2020), the court determined that while bankruptcy courts could not approve a professional's employment nunc pro tunc, this did not prevent courts from using their equitable discretion to reimburse professionals for their preemployment services. *Miller,* 2020 WL 8617627 at *1. Similarly, in *In re Roberts,* 618 B.R. 213, 215 (Bankr. S.D. Ohio 2020), the court held that although bankruptcy courts must authorize a professional's employment before granting compensation for their preemployment services, this did not mean that services rendered before the employment order would go unpaid. *Roberts,* 618 B.R. at 217.

Further, in *In re Benitez,* 2020 WL 1272258 (Bankr. E.D.N.Y. Mar. 13, 2020), the court concluded that retroactive approval of a bankruptcy estate professional's retention, whether termed nunc pro tunc or "post-facto", was not mandated by the Bankruptcy Code or Rules. *Benitez,* 2020 WL 1272258 at *2. The court there emphasized that neither the Bankruptcy Code nor the Rules prevented the court from awarding "reasonable compensation" or reimbursing "actual, necessary expenses" for services performed before an order approving the professional's retention. *Id.* The key requirement was that the professional must be retained as required under § 327, but once

retained, the bankruptcy court had the flexibility to compensate them for services rendered both before and after court approval in accordance with § 330 of the Bankruptcy Code. *Id.*[23]

The Court also finds instructive the analysis in another case grappling with the issue of retroactive professional employment in *In re Hunanyan*. In that case, the Chapter 7 trustee filed an application to employ an accounting firm and its accountants nunc pro tunc to evaluate the debtor's assets and liabilities, assess tax-related issues, and prepare tax returns, among other responsibilities. *In re Hunanyan*, 631 B.R. 904, 907 (Bankr. C.D. Cal. 2021). The United States Trustee objected to the employment application arguing that the retention should be effective as of the hearing date, or if no hearing is held, when the court entered the employment order based on the principles articulated in *Acevedo*. *Id*. The court disagreed and overruled the objection, holding that *Acevedo* did not alter the court's existing authority to approve employment that had already commenced before the application was filed. Specifically, the court found:

> *Acevedo* reiterates a long-established principle that jurisdiction in the federal courts must emanate from the United States Constitution or a statute and cannot be created by the actions of a court.' As the Ninth Circuit BAP explained with respect to § 362(d) of the Bankruptcy Code, a specific statute conferring authority on the court does not exceed the court's jurisdiction in the way the language of the removal statute prohibited the court from exercising jurisdiction in *Acevedo*. The court has explicit authority under 11 U.S.C. § 327 to approve this employment application without resorting to equitable principles or issuing *nunc pro tunc* orders.

*Id.* at 908. The court went on to thoroughly explain the statutory scheme governing employment and compensation, stating that while other sections of the Bankruptcy Code have time limitations for filing, §§ 327 and 330 (and Bankruptcy Rule 2014(a)) contain no timing requirement for when

---

[23] Other courts have also found similarly. See, e.g., *In re Wellington*, 628 B.R. 19, 25 (Bankr. M.D. N.C. 2021) (noting that although *Acevedo* may have eliminated nunc pro tunc retention orders, courts are not prohibited from compensating professionals under § 330 for work performed prior to the effective date of employment because such work is common in bankruptcy litigation).

applications should be filed. *Id.* Distinguishing itself from the approach adopted in *Miller, Roberts,* and *Benitez*, the court found that there is no statutory prohibition on retroactive retention orders because § 327(a) requires a court's "approval" as opposed to a court's "prior approval". *Id.* at 911. The court pointed out that there are circumstances where professional employment is needed (e.g., at the beginning of a bankruptcy case), before parties could even comply with certain requirements encompassed within the Bankruptcy Rules. *Id.*[24]

In further discussing the timing of retention and compensation applications, the court acknowledged that its reading of § 327 still leaves open the question of what to do with employment applications filed after a significant delay from when employment begins and often filed at the same time as a compensation application. Even though not faced with a retention application after a long delay, in answering its own question, the court cited established case law recognizing courts' ability to approve both employment and compensation where there were "long delays in employment applications with a requirement that professionals show 'extraordinary' or 'exceptional circumstances'". *Id.* at 910 (internal citation omitted). Citing to Ninth Circuit precedent, the court underscored the difference in the purposes of §§ 327 and 330 and summarized how those courts addressed what it coined as "delayed application" cases:

> These delayed application cases are better understood as exercising the court's control of compensation as a tool to have timely oversight of the use of estate assets. The employment application must be reviewed for conflicts, but it is also a preview of whether the estate should be compensating certain professional services. Where

---

[24] Indeed, as the court noted, in situations where work must commence promptly, there is an inherent need for retrospective validation. This is because an employment application cannot receive approval until it is brought to the court's attention in accordance with Bankruptcy Rule 9013, which necessitates a written motion filed within the prescribed timeframe in Bankruptcy Rule 9006(d), mandating a notice period of no less than seven days. *Id.* at 909. The court also pointed out that Bankruptcy Rule 6003(a) expressly prohibits the issuance of an order granting an application under Bankruptcy Rule 2014 within the initial 21 days of a bankruptcy case unless there is a compelling demonstration of immediate and irreparable harm. *Id.* at 909-10.

that is unreasonably delayed, explanations and greater scrutiny are in order. Although approval of the employment was delayed and the authorization was needed before any compensation could be paid, the employment itself was not a fiction.

*Id.* at 913. Rounding out its discussion, the court recognized the importance of not delaying in seeking court approved employment because "waiting delays court oversight and makes review more difficult." *Id.* at 910.[25]

After review of *Acevedo* and the cases which followed, there is disagreement about *Acevedo*'s impact. Clearly, litigants may still seek entry of nunc pro tunc orders, but the Supreme Court made plain that the entry of nunc pro tunc orders is only acceptable if a court makes a ruling but simply fails to enter an order at the time. Based on this Court's experience, employment and compensation or fee applications do not typically fall under this category. In any event, it is also clear to this Court that the Supreme Court's decision is foremost jurisdictional: nunc pro tunc orders cannot be used to cure jurisdictional defects.

At the same time, the Court believes that while the Supreme Court's decision may have narrowed when federal courts may issue nunc pro tunc orders, its reach should be limited in the bankruptcy context beyond mere definitional clarification because the Supreme Court did not address orders that provide retroactive relief under the Bankruptcy Code or Rules or the bankruptcy court's equitable power. Nothing in *Acevedo* prohibits bankruptcy courts from granting

---

[25] The Court also points to a more recent case in *City of Rockford v. Mallinkrodt PLC (In re Mallinkrodt PLC)*, 2022 WL 906462 (D. Del. March 28, 2022). On appeal, the district court ultimately held the bankruptcy court was well within its discretion in following the established case law in retroactively approving the employment of counsel. *Mallinkrodt,* 2022 WL 906462 at *7. Specifically, the district court explained that *Acevedo* did not overrule Third Circuit precedent because *Acevedo* did not consider bankruptcy law issues and only disallowed the use of nunc pro tunc orders to create jurisdiction where there was none. *Id*. at *8. Like the court in *Hunanyan*, the district court also recognized bankruptcy notice requirements make retroactive relief permissible and practically required. *Id*. at *9.

retroactive relief, even on equitable grounds, where jurisdiction exists. Other courts have reached the same conclusion, determining that *Acevedo* simply reiterates the well-understood distinction between a court "creat[ing] jurisdiction where none exists" and granting retroactive relief on equitable grounds when the court indisputably has jurisdiction to act. See *Merriman v. Fattorini* (*In re Merriman*), 616 B.R. 381, 391 (B.A.P. 9th Cir. 2020); see also, e.g., *In re SS Body Armor I, Inc.,* 2021 WL 2315177, at *3 (Bankr. D. Del. June 7, 2021) ("*Acevedo* does not prohibit courts from entering nunc pro tunc orders where there are no jurisdictional defects.").

While this Court may differ with other courts concerning the scope of *Acevedo*, the Court recognizes that "nunc pro tunc" relief should not be used synonymously with "retroactive" or "post facto" relief—even if the legal effect of nunc pro tunc orders has often been associated as providing retroactive relief in the employment application context. In that vein, the Court must also address retroactive relief concerning professional retention and compensation. In doing so, the Court is persuaded, in part, by the approach as laid out in *Hunanyan*. Although the court there was not faced with a delayed employment application as is the situation facing this Court, its legal analysis is sound regarding the interplay between §§ 327 and 330, the contemplated retroactive approval allowed by the Bankruptcy Code, and its reading of *Avecedo*. Simply put, using the persuasive authority above, this Court can establish and/or adopt a rule: where retention applications are filed within a reasonable time after employment begins in accordance with Bankruptcy Code and Rules, the Bankruptcy Code and Rules permit this Court to approve such an application without the need to invoke equitable principles or notions of retroactive or post facto relief. But when employment applications are significantly delayed, as discussed more below, the Fifth Circuit has long held that exceptional circumstances must be shown to allow retroactive employment approval and

compensation. See *Fanelli v. Hensley (In re Triangle Chemicals, Inc.)*, 697 F.2d 1280, 1289 (5th Cir. 1983).

### D. WBS's Employment

Having established the Court's position on retroactive relief, and before any discussion of WBS's compensation, the Court will first address the status of WBS's employment under the facts and circumstances of this case. Although not pled in the Employment Application, WBS is asking this Court to make its employment under § 327 effective as to an earlier date, i.e., when it began work for the Debtor on September 27, 2021. In other words, WBS is requesting that it approve its employment post facto. The Court wants to be clear: this is not a situation where WBS is merely seeking employment at or near the beginning of a bankruptcy case where the work began before its attorneys satisfied the hearing and notice requirements under Bankruptcy Code and Rules like in *Hunanyan*.[26] Here, WBS is seeking employment as the Debtor's counsel 18 months postpetition and now postconversion to Chapter 7.

Notwithstanding the conversion issue, and under these circumstances, the Fifth Circuit has long held that bankruptcy courts have discretion to consider whether approval of an attorney's employment should be granted retroactively. *Triangle Chemicals*, 697 F.2d at 1289. Specifically, bankruptcy courts may approve an application to employ an attorney with retroactive effect so that the attorney may receive compensation, but only under "rare" or "exceptional circumstances" and upon a proper showing that, through oversight, the attorney failed to seek employment approval under § 327. *Id.* Nevertheless, the Fifth Circuit did not intend to "encourage non-observance of the

---

[26] The Court notes this is also not a situation in which the Court encounters frequently in Chapter 13 or 7 bankruptcy cases where an attorney is seeking special counsel employment or compensation where a debtor retained the attorney either pre- or postpetition date and the attorney was unaware of the bankruptcy filing.

contemplated preemployment court approval" process. *Id.*; *In re Hydro Servs., Inc.*, 277 B.R. 309, 310-311 (Bankr. E.D. Tex. 2001) (analyzing the Fifth Circuit's holding in *Triangle Chemicals* and finding that employment applications approved retroactively should not be approved without considering the circumstances, facts, and equities in the case or be granted "*carte blanche*" to relegate the Bankruptcy Code and Rules as mere formalities).[27]

In addition to the above authority, our Local Rules provide guidance for attorneys seeking retroactive employment:

> (c) Nunc Pro Tunc Application. (1) If an application for the approval of the employment of a professional seeks to make the authority retroactive to the commencement, the application must include: (A) An explanation of why the application was not filed earlier; (B) An explanation why the order authorizing employment is required nunc pro tunc; (C) An explanation, to the best of the applicant's knowledge, how approval of the application may prejudice any parties-in-interest.

Miss. Bankr. L.R. 2014-1(c).[28]

*1. The Effect of Conversion*

Despite this Court's ability to approve employment applications post facto, conversion adds

---

[27] Like the court in *Hunanyan* dealing with Ninth Circuit precedent, this Court is aware of prior decisions within the Fifth Circuit that may slightly conflate the distinctions between employment under § 327 and compensation for reasonable and necessary services under § 330. In addition, the Fifth Circuit has previously used nunc pro tunc to describe retroactive relief where not appropriate. The above is true considering this Court's holding that there is no statutory "prior approval" requirement under § 327. The Court agrees with the reasoning in *Hunanyan* that cases involving delayed applications should be viewed as instances where the court utilizes its authority over compensation as a means to maintain timely supervision over the use of a bankruptcy estate's resources. In addition, while it is necessary to examine employment applications for potential conflicts, employment applications do serve as a preview of whether the bankruptcy estate should be remunerating specific professional services, and as such, the review requires close examination. Viewed in this light, this Court is well equipped to discuss both employment (and compensation if necessary) understanding these distinctions, which still do not change the relevant standard in the Fifth Circuit regarding retroactive approval in delayed application cases.

[28] Even the Local Rules may need amending to remove language referencing nunc pro tunc in the typical employment application process, which does not comport with the Supreme Court's definition as articulated in *Acevedo*.

an additional wrinkle. To begin, the Court has found only a few cases where retroactive relief has been granted to retain a professional after a conversion. See, e.g., *McKenzie*, 449 B.R. at 318 (holding that, following conversion of the debtor's bankruptcy case from Chapter 11 to Chapter 7, the court had discretion to approve trustee's employment of an attorney as special counsel retroactively where trustee did not object, no creditor or other interest party objected, and attorney and law firm sought preemployment); see also *In re Burke*, 147 B.R. 787, 800 (Bankr. N.D. Okla. 1992) (finding that counsel for Chapter 7 debtor in a converted Chapter 12 bankruptcy case are entitled to employment retroactively). But in *McKenzie*, a Chapter 7 trustee sought employment of counsel (who's employment had already been approved preconversion) to continue performing services which would benefit the bankruptcy estate in the converted case. *McKenzie*, 449 B.R. at 311. That is clearly not the case here as WBS has conceded this will be its first and only request for compensation. Further, both cases above did not address the issue of retroactive employment for what WBS is primarily seeking: employment during the Chapter 11 period of the bankruptcy case.

Since the Court took this matter under advisement, the Court has discovered one applicable case where a bankruptcy court, and district court on appeal, allowed retroactive approval of professional employment during the preconversion phase of the bankruptcy case. In *David v. King (In re David)* 2023 WL 50040309 (E.D. Va. August 3, 2023)[29], the district court considered whether the bankruptcy court had the authority to approve an employment application for a former Chapter 11 trustee to employ a professional on behalf of the bankruptcy estate—effective only for the Chapter 11 phase of the case. *David,* 2023 WL 50040309 at *1. In the underlying bankruptcy case, the debtor filed a Chapter 7 petition on July 10, 2018, and the Chapter 7 trustee selected a

---

[29] The Court notes that this district court decision is currently on appeal before the Fourth Circuit as of August 17, 2023.

law firm to represent him, which the bankruptcy court approved on April 10, 2019. *Id.* The case was later converted from a Chapter 7 to Chapter 11, and the former Chapter 7 trustee was appointed as Chapter 11 trustee. *Id.* The case was then converted from Chapter 11 to Chapter 13 on May 21, 2020, terminating the Chapter 11 trustee's appointment. *Id.* Postconversion to Chapter 13, the former Chapter 11 trustee applied for approval of administrative expenses, which included professional services provided by the previously employed law firm during the pendency of the Chapter 11 bankruptcy case. The debtor objected to the application, asserting the law firm was not properly employed during the Chapter 11 case because no employment application had been filed. *Id.* The bankruptcy court then required the former Chapter 11 trustee to file an additional application for approval during the Chapter 11 phase of the case, and the debtor once again objected to that application on the basis that the former Chapter 11 trustee did not have standing to seek employment of counsel and retroactive approval was not appropriate. *Id.* The bankruptcy court approved employment and compensation as of the date of the hearing, and later denied the debtor's motion to reconsider. *Id.*

The debtor then appealed the bankruptcy court's denial of his motion to reconsider, and the appellate court considered whether the former Chapter 11 trustee had standing to hire a professional person on behalf of the bankruptcy estate after the conversion from Chapter 11 to Chapter 13. *Id.* The appellate court vacated the bankruptcy court's order denying the motion to reconsider but did not disturb the bankruptcy court's order approving the former Chapter 11 trustee's application to employ counsel. *Id.* at *2. According to the appellate court, the bankruptcy court committed clear error by allowing the former Chapter 11 trustee to act on behalf of the bankruptcy estate despite his status as a former trustee. *Id.*

On remand, the bankruptcy court reconsidered and amended its employment and

compensation order, which allowed the prior employment of the law firm only up to the date in which the bankruptcy case was converted to Chapter 13. *Id.* Nevertheless, the debtor still appealed that order. *Id.* On appeal, the district court considered whether a retention application could be approved for a former Chapter 11 trustee seeking to employ a professional effective only for the pendency of the Chapter 11. *Id.* The district court answered that question in the affirmative, holding that the Chapter 11 trustee had the authority to employ professionals while the bankruptcy case was pending as a Chapter 11 case under § 327(a). Even though the conversion terminated the Chapter 11 trustee's fiduciary office under § 348(e), the district court explained that the bankruptcy court had the authority to permit retention retroactively, which covered the time for which the bankruptcy case was pending as a Chapter 11. *Id.* Discussing Third Circuit precedent, the district could found that *Acevedo* did not overrule such precedent because *Acevedo* failed to consider any bankruptcy legal issues, was limited in scope, and only disallowed the use of nunc pro tunc orders to create jurisdiction where none previously existed. *Id.*

The Court recognizes *David* is not binding, but the Court agrees with both the bankruptcy court and district court that retroactive employment is not precluded based on *Acevedo*. The Court also spent time including *David* in this Opinion and Order because, despite its status on appeal before the Fourth Circuit, there is precedent of a bankruptcy court's approval of employment retroactively for a certain period time prior to conversion. Like the first district court's holding and remand in *David* concerning the date of the retroactive employment, the Court cannot find any basis in statute or prior case law to approve a Chapter 11 debtor-in-possession's attorney's retroactive employment after a conversion to Chapter 7 where the attorney would seek to represent the bankruptcy estate in the Chapter 7 under these circumstances. Now that the bankruptcy case is a case under Chapter 7, the Bankruptcy Code and Rules are clear that the trustee is the only party

who may seek to employ counsel on behalf of the Chapter 7 bankruptcy estate. *See In re WDS, Inc.,* 336 B.R. 301, 304 (Bankr. W.D. Ky. 2006) (denying a retroactive professional employment application after conversion from a Chapter 11 bankruptcy case to a case under Chapter 7 and holding that, under § 327, only the trustee may seek to hire counsel). Merely looking to the face of the Employment Application, WBS is seeking employment—not as counsel for the Chapter 7 Trustee on behalf of the bankruptcy estate—but by the former Debtor-in-possession to facilitate a successful reorganization. Neither of which is now applicable in a Chapter 7 liquidation. Even more, the Chapter 7 Trustee here is not seeking to employ WBS and objects to its employment. Put plainly, the only way this Court will approve WBS's employment retroactively, and only during the pendency of the Chapter 11, is if WBS meets the requisite standard established by the Fifth Circuit and as provided in the Local Rules.

      *2.   The Fifth Circuit Standard and Local Rule Applied*

Considering the applicable standard for retroactive approval of WBS's employment during the Chapter 11 period of the bankruptcy case, WBS failed to make a proper showing of exceptional circumstances or present sufficient justification for the delay in filing its Employment Application. In fact, WBS failed to provide any explanation as to the timing of its filing or the reason for delay in its Employment Application, which is a violation of the Local Rules. While WBS attempted to explain in its later filed pleadings and at the hearing why its attorneys waited until May of 2023 to file the Employment Application, the Court does not find those arguments convincing. To begin, the Debtor filed the Petition on September 29, 2021, and the Court converted the bankruptcy case to Chapter 7 on March 2, 2023. WBS and its attorneys had approximately 520 days between the Petition date and the conversion date to seek this Court's approval for employment.

Even if WBS and its attorneys were still providing services during the pendency of the

Chapter 11 bankruptcy case, this argument still fails to explain why an employment application could not have been filed sooner. Even if WBS and its attorneys believed the Court would have dismissed the bankruptcy case by way of the Debtor's voluntary dismissal motion, the Court denied that relief on January 12, 2022. Even worse, according to the WBS's Itemization, WBS's last time entry for services performed during the Chapter 11 case was on August 19, 2022—six months prior to conversion. The Court is also confused by WBS's dilatory filing of its Employment Application considering Geno filed his application to employ in April of 2022, which is over a year before WBS filed its Employment Application. It should have been clear to WBS that the Court's approval of its employment under § 327 had nothing to with whether WBS had completed or was still performing work for the Debtor.

As to whether retroactive approval of WBS's employment at this stage would prejudice other parties, the Court has considered the fact that WBS provided valuable services to the bankruptcy estate facilitating the sale of multiple parcels of real property, including the Debtor's homestead. The Court is aware that the sale of those properties resulted in monetary recovery benefiting the bankruptcy estate. Despite WBS's unauthorized employment in that capacity, the reality is that payment of its fees and expenses at this juncture may very well prejudice other Creditors entitled to receive distribution from the Chapter 7 bankruptcy estate. If the Court approves WBS's employment (and its attorney's fees and expenses) retroactively, unsecured Creditors could receive less in distributions if WBS receives compensation.

As the Court stated at the hearing, it also appreciates WBS's disclosure filed of record showing its receipt of the $25,000.00 retainer under § 329. Further, as stated above, WBS filed multiple pleadings in this bankruptcy case indicating WBS and its attorneys were representing the Debtor in some capacity. Indeed, it is as not as if WBS's employment was a fiction. The Court

considered these facts because notice of a professional's intent to represent a debtor or trustee and seek compensation is one of the purposes of the § 327 employment process in addition to eligibility based on potential conflicts. But as far as this Court is concerned, an attorney representing a Chapter 11 debtor without court approval under § 327 is simply considered a volunteer if that attorney seeks payment from the bankruptcy estate. *In re Schupbach Invs., LLC*, 521 B.R. 449, *4 (B.A.P. 10th Cir. 2014), *aff'd sub nom. In re Schupbach Invs., L.L.C.*, 808 F.3d 1215 (10th Cir. 2015).

### E. WBS's Compensation and Expense Reimbursement

Having disapproved WBS's post facto Employment Application, the Court must still briefly address whether WBS is entitled to compensation and expense reimbursement for work performed pre- and postpetition and postconversion. The initial prerequisite to compensation under § 330 is that a professional must seek and obtain court-approved employment by complying with the requirements of § 327 and Rule 2014. Court approval of a debtor-in-possession's counsel in a Chapter 11 bankruptcy case is the *sine qua non* to counsel receiving compensation. *In re Nestor*, 628 B.R. 707, 715 (Bankr. S.D. Fla. 2019) (internal citation omitted). In other words, failure to obtain court approval of a professional under § 327 and Rule 2014 precludes payment of fees and expenses. *Id.*[30]

---

[30] While not cited by the parties, this Court is aware of another bankruptcy court's decision in Mississippi: *In re Scott*, 531 B.R. 640 (Bankr. S.D. Miss. 2015). In that case, the court held, under specific circumstances of a Chapter 13 bankruptcy case, special counsel (not the debtor's bankruptcy counsel) who pursued an exempt asset was not required to seek employment under §§ 327(e), 328, and Rule 2014. *Id.* at 646-47. *Scott* is wholly inapplicable to the issues before this Court. As special counsel, the attorney is not a trustee or debtor-in-possession for whom the Bankruptcy Code imposes the duties of a trustee. Here, during the pendency of the Chapter 11, the term "trustee" under § 327 applied to the Debtor-in-possession, because debtors-in-possession have most of the powers and duties of trustees. Even in *Scott*, however, special counsel was still subject to bankruptcy court oversight through other provisions of the Bankruptcy Code and Rules. *Id.* at 647.

Here, WBS's Fee Application should be disapproved in its entirety. At no point during the pendency of the Chapter 11 case, or now, has the Court approved such employment. As a result of WBS failing to obtain court-approved employment under § 327 at any time during their representation of the Debtor, WBS and its attorneys have not satisfied the prerequisites to compensation under § 330 and is therefore precluded from receiving compensation under § 330. While this result is harsh, which is not a fact ignored by this Court, the purpose and function of the Bankruptcy Code provisions regarding employment and compensation are not a mere formality. Those provisions allow courts to perform proper oversight and administration of bankruptcy cases. Attorneys practicing before this Court need to understand the potential consequences, as demonstrated in the bankruptcy case, for failing to follow the applicable law regarding employment and compensation.[31]

## IV. CONCLUSION

In summary, the Court first recognizes that *Acevedo* does not prohibit the retroactive employment approval for bankruptcy estate professionals. Further, because § 327 does not require preapproval, a court may approve retroactive employment when an employment application is filed within a reasonable amount of time after employment begins. While § 327 contemplates employment beginning before approval, when professionals delay in seeking court approved employment, the oversight function of § 327 is diminished, which requires increased scrutiny when examining employment applications. Further, WBS and its attorneys failed to provide sufficient justification for this Court to approve its delayed filed Employment Application according to the

---

[31] Because the issue is not currently before this Court, the Court makes no determination as to whether WBS has any other recourse to recover its attorneys' fees or expenses by utilizing the proof of claim process.

relevant standards articulated by the Fifth Circuit and the Local Rules.  Thus, the Court finds that

WBS's Employment Application filed nearly 18 months after employment began is too delayed in

this case—especially considering the bankruptcy case is now a case under Chapter 7. Last, the

Court finds that due to WBS's failure to secure court approval for its employment under § 327,

WBS and its attorneys are not entitled to compensation for services or reimbursement for expenses

under § 330.

Based on the above findings, it is hereby **ORDERED**:

1. The *Application to Employ Attorneys* (Dkt. #291) is **DISAPPROVED**; and

2. The *First Application for Allowance of Compensation and Reimbursement of Necessary Expenses for the Law Offices of Whittington, Brock & Swayze, P.A.* (Dkt. #292) is also **DISAPPROVED**.

##END OF ORDER##